| | | |
|---|---|---|
| AMBER VAN LEER, | ) | Case No. 1:20-cv-387 |
| | ) | |
| Plaintiff, | ) | Judge J. Philip Calabrese |
| | ) | |
| v. | ) | Magistrate Judge Thomas M. Parker |
| | ) | |
| UNIVERSITY CONTRACTING | ) | |
| COMPANY, LLC d/b/a | ) | |
| UNIVERSITY MANOR, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## OPINION AND ORDER

Amber Van Leer worked as a licensed practical nurse for University Contracting Company, LLC, which does business as University Manor. During her employment, Ms. Van Leer suffered from chronic and pervasive eczema, which forced her to take leave under the Family and Medical Leave Act. When that leave ended in October 2019, Ms. Van Leer did not show up to work her first scheduled shift, and University Manor terminated her employment.

Plaintiff sued, alleging her employer violated various anti-discrimination and anti-retaliation provisions of federal and State law and that it committed several employment-related torts. After removal and following discovery, University Manor now moves for summary judgment. (ECF No. 19.) On June 30, 2021, the Court held oral argument on the motion. For the reasons that follow, there is no dispute of material fact about Plaintiff's claims, and University Manor is entitled to judgment as a matter of law. Therefore, the Court **GRANTS** the motion.

**STATEMENT OF FACTS**

Defendant University Contracting Company, LLC, operating as University Manor, staffs and runs a nursing facility that provides respite, short-term, long-term, and hospice care to its residents. Plaintiff Amber Van Leer worked for University Manor from 2014 until her termination in October 2019. The gravamen of her complaint relates to her return from leave, which she took due to an eczema flare-up that directly preceded her termination. She alleges she was discriminated against because of her eczema and retaliated against for taking leave in the first place.

**A.  Ms. Van Leer's Employment with University Manor**

Ms. Van Leer began working for University Manor in 2014 as a State-tested nursing assistant, or STNA. (ECF No. 31-1, PageID #115.) In this role, Ms. Van Leer took "care of the patients or residents," including tasks related to hygiene, safety, cleanliness, and feeding, among other duties. (*Id.*) As an STNA, Ms. Van Leer did not work a normal schedule; rather, she worked on an "as-needed" basis. (*Id.*, PageID #117.) She left for "a brief period" to complete nursing school, but rejoined University Manor thereafter. (*Id.* at PageID #115.)

In August 2016, University Manor promoted Ms. Van Leer to "nurse," as a licensed nurse practitioner, or LPN. (*Id.*) This promotion came with an increase in pay, hours, and responsibility. (*Id.*, PageID #140.) As for Ms. Van Leer's new work schedule, University Manor published each schedule for the upcoming month in advance, usually toward the middle or end of the prior month. (*Id.*, PageID #124.) For example, the schedule for October 2019 was published sometime around mid-September. The schedules were "printed out and put in a folder," and they were

available to the nurses on each floor. (*Id.*) As a general matter, Ms. Van Leer remembered the calendars were "usually on the unit" and agreed that she "always" knew where to find it. (*Id.*) As for her specific schedule, Ms. Van Leer worked a two-week rotation, which required her to work alternating weekends. (*Id.*) A "W" on the schedule meant Ms. Van Leer was supposed to work, and a "slash" meant she was off. (*Id.*, PageID #124–25.; *see also, e.g.*, ECF No. 13-7, PageID #193–200 (2019 work schedules).) A "V" stood for vacation, meaning she was not scheduled to work because she requested the day off. (ECF No. 13-1, PageID #126.)

Ms. Van Leer also suffers from severe eczema, particularly on her hands. (*Id.*, PageID #140.) During a flare-up, her skin becomes cracked and inflamed, her joints swell, and often these cracks produce open sores. (*Id.*) The openings themselves swell and itch, causing excruciating pain. (*Id.*) Sometimes these flare-ups result in Ms. Van Leer's hands becoming visibly bloody or covered with pus. (*Id.*) During these flare-ups, Ms. Van Leer's pain registers a ten on a scale from zero to ten, with ten being the most painful. (*Id.*) She stated that "anywhere she was affected" would become inflamed and that she suffers insatiable "itching from the inside" that is not remedied by any topical ointment. (*Id.*) Occasional flare-ups make it difficult for Ms. Van Leer to complete at least some of her job duties. (*Id.*)

### B. FMLA Leave

Toward the end of September 2019, Ms. Van Leer's eczema flared up. (ECF No. 13-1, PageID #127.) The pain became unbearable, and she sought care from both her primary care physician and a dermatologist. (*Id.*; ECF No. 13-8, PageID #203.) Eventually Ms. Van Leer requested, and University Manor approved, leave under the

3

Family and Medical Leave Act, which began on September 28, 2019. (ECF No. 13-1, PageID #127.) When she went on FMLA leave, one of her supervisors, Darlene Rose, informed Ms. Van Leer that University Manor would hold her job open, but that it could not guarantee her the same schedule upon return. (*Id.*, PageID #142.) At the time she went on leave, Ms. Van Leer was scheduled to work every Thursday, just as she had each previous month that year. (*Id.*, PageID #126; ECF No. 13-7, PageID #201.)

### C.    End of Leave and Return to Work

Ms. Van Leer's leave ended a few weeks later. Her FMLA paperwork says her end date for her period of incapacity was October 17, 2019. (ECF No. 13-9, PageID #206.) A doctor's note dated September 30, 2019 states, "Please excuse Amber Ms. Van Leer from work September 26 2019 until October 17 2019. SHe is currently under my care. Any questions please fell free to contact me [*sic passim*]." (ECF No. 13-8, PageID #203.) A second note dated October 11, 2019, says, "AMBER VANLEER has been under my care from 9/26/2019 to 10/16/2019 and will be able to return to work on 10/17/19[.]" (ECF No. 13-10, PageID #208.) Ms. Van Leer agrees that she was on leave from October 1, 2019, through and including, October 16, 2019. (ECF No. 13-1, PageID #143.)

Ms. Van Leer provided this second letter, the one clearing her to return to work, to University Manor. (*Id.*, PageID #128.) She remembered giving the letter to someone at University Manor, but does not recall to whom or when. (*Id.*, PageID #142.) Ms. Van Leer's supervisor, Darlene Rose, recalls that Ms. Van Leer "hand deliver[ed]" the return to work letter to her on the Friday before October 17, 2019,

which was the following Thursday. (ECF No. 15-1, PageID #311.) Accordingly, University Manor was aware that Ms. Van Leer's physician cleared her to return to work on October 17, 2019. According to the October 2019 schedule, Ms. Van Leer was scheduled to work that day, which was signified by the "W" that appeared by her name. (ECF No. 13-7, PageID #202.) Ms. Van Leer did not come to work on October 17, 2019, and did not call in to let University Manor know she would not be there. (ECF No. 13-1, PageID #129.)

### D.    Ms. Van Leer's Termination

University Manor has a "no-call no-show" termination policy, meaning if an employee does not show up for work and does not call in before the start of her shift, she is summarily terminated. (*Id.*, PageID #121.) Over the course of three years, Rose recalled that fifty-eight employees besides Ms. Van Leer were fired for violating this specific policy. (ECF No. 17-1, ¶ 7, PageID #358; ECF No. 17-2, PageID #360–65.) Ms. Van Leer knew about the policy because it applied to her both as an STNA and as an LPN. (ECF No. 13-1, PageID #121.) The policy is also included in University Manor's employee handbook. (ECF No. 13-3, PageID #179.) Ms. Van Leer received a copy of that policy on April 5, 2016 and acknowledged that she received and read it. (ECF No. 13-1, PageID #121.) The policy did not change during her employment. (*Id.*)

Based on this policy, when Ms. Van Leer did not come in for work on October 17, 2019, Rose reported this fact to University Manor's director of nursing, Sadiqa Mills. (ECF No. 15-1, PageID #313.) Mills then tried to call Ms. Van Leer "twice" or "three times," to no avail. (*Id.*) Later that day, Rose went to another supervisor, Jean Hollenbeck, who also called Ms. Van Leer, but could not reach her. (*Id.*)

The next day, October 18, 2019, Hollenbeck was able to get ahold of Ms. Van Leer and initially told her to come in the next day she was scheduled to work—October 19—so they could discuss the no-show. (ECF No. 14-1, PageID #267.) After they hung up, Hollenbeck walked to Mills' office where the two discussed the phone call Hollenbeck had with Ms. Van Leer. (*Id.*, PageID #267.) Upon hearing that Hollenbeck told Ms. Van Leer to report the next day, Mills provided her opinion that Ms. Van Leer should be terminated for a no-call, no-show violation, there was no need for her to come in, and she suggested Hollenbeck call Ms. Van Leer back and inform her of this decision. (ECF No. 16-1, PageID #350.) Hollenbeck agreed, called Ms. Van Leer back, and informed her of her termination. (*Id.*, PageID #350–51; ECF No. 14-1, PageID #267.) Hollenbeck recognized the policy for no-call, no-show violations permits "no leniency" and "if you don't call, you don't show up, you lose your job." (ECF No. 14-1, PageID #267.)

Ms. Van Leer remembers these calls similarly, that Hollenbeck called her on October 18, 2019, asking if she would come in the next day. (ECF No. 13-1, PageID #129–30.) She also recollected Hollenbeck calling back a second time, approximately fifteen minutes later, and saying "basically . . . that it was brought to her attention that [Ms. Van Leer] was supposed to be present at work on October 17th," that she had not appeared, and her employment was terminated. (*Id.*, PageID #130.)

University Manor also provided Ms. Van Leer a letter regarding her termination. (*Id.*, PageID #130; ECF No. 13-11, PageID #209.) It is signed by two individuals—Mills and Hollenbeck—and dated October 18, 2019. (ECF No. 13-11,

PageID #209.) The reason for her termination, according to the letter, is she failed to return from FMLA or other leave. (*Id.*) Ms. Van Leer recalled that the letter indicated the last day she worked "was actually the date of [her] FMLA leave," which she "questioned" but could not recall if she worked that day or not. (ECF No. 13-1, PageID #130–31.) She did agree that she was able to work on October 17, 2019, with no restrictions. (*Id.*, PageID #131.) She maintains, however, she was not "given a chance to return" after her FMLA leave ended. (*Id.*)

## STATEMENT OF THE CASE

No one disputes that Ms. Van Leer did not report to work on October 17, 2019. At bottom, the parties disagree whether Ms. Van Leer was supposed to work that day. Plaintiff maintains that, because Rose told her that after her leave her schedule might not be the same and because the schedule showed Ms. Van Leer with a "W" even while she was on FMLA leave, the calendar was inaccurate. (ECF No. 13-1, PageID #142–44.) Plaintiff argues the schedule, looking backward, was not accurate for October 1 through October 16 because it showed a "W," listing her as working, when in fact she was on leave. (*Id.*, PageID #143.) Therefore, Ms. Van Leer maintains she did not have notice that she was expected to work on October 17, 2019. (*Id.*, PageID #143–44.) Further, Plaintiff argues that, because each schedule said "SUBJECT TO CHANGE" in handwriting across the top, it left doubt regarding whether she had to work on October 17, 2019. (*Id.*, PageID #142.) University Manor believed Ms. Van Leer was scheduled to work on October 17, 2019, and she failed to show up. (ECF No. 19-1, PageID #385 (collecting testimony).) These competing positions form the basis for the parties' dispute.

In January 2020, Plaintiff sued University Manor in State court for discrimination under the Americans with Disabilities Act and Section 4112 of the Ohio Revised Code and for unlawful retaliation under the Family and Medical Leave Act. (ECF No. 1-1, ¶¶ 38–69, PageID #11–14.) She also asserted two State-law claims: one tort claim for negligent training, retention and supervision and another statutory claim for alleged failure to produce employment records. (*Id.*, ¶¶ 70–80, PageID #14–15.) Defendant removed the action, promptly answered, and the parties began discovery.

## A. Defendant's Motion for Summary Judgment

Defendant seeks summary judgment on each of Plaintiff's five claims. (ECF No. 19.) On the ADA, Defendant does not dispute that Plaintiff satisfies her *prima facie* showing, but does believe it had a legitimate, non-discriminatory reason for firing her, *i.e.*, that she violated the company's no-call, no-show policy. (ECF No. 19-1, PageID #389.) Defendant maintains there is no circumstantial evidence, and certainly no direct evidence, in the record to indicate its reason for firing Ms. Van Leer was a pretext for discrimination of any kind, let alone because of her medical condition (eczema). (*Id.*, PageID #390–91.) Further, Defendant argues the "honest belief rule" applies. (*Id.*, PageID #391.)

With respect to the FMLA, Defendant agrees the same framework applies. Without disputing that Plaintiff satisfies her prima facie case, Defendant argues there is no direct or circumstantial evidence of unlawful retaliation. (*Id.*, PageID #392–93.) It maintains the reason for terminating Ms. Van Leer was legitimate, nondiscriminatory, and not retaliatory, but instead resulted from violation of its well-

established policy.  (*Id.*, PageID #393.)  Again, Defendant argues its "honest belief" insulates it from liability on this claim.  (*Id.*, PageID #393.)

Because both the ADA and FMLA claims fail, Defendant argues the State-law negligent training, supervision, and retention claim fails too.  (*Id.*, PageID #394–95.) Finally, regarding the failure to produce employment and wage-and-hour documents, Defendant maintains Ms. Van Leer is able to access these documents herself through its online employment portal, or at least she could have for several months following her employment with the company.  (*Id.*, PageID #396.)

### B.    Plaintiff's Opposition

Plaintiff opposes summary judgment on each claim.  (ECF No. 22.)  On the ADA claim, she argues there are genuine issues of material fact concerning *why* University Manor fired her, including that (1) its decision has no basis in fact because she was told to come in on October 19, 2019; (2) the no-call no-show did not actually or sufficiently motivate the termination; and (3) University Manor's "honest belief" was not so honestly held.  (*Id.*, PageID #466–69.)

On the first point, Plaintiff argues "there is no basis in fact that Defendant terminated [her] for purportedly missing work on October 17th" because it scheduled her "to work on October 19th."  (*Id.*, PageID #467.)  She argues that, "at the very least, the date Plaintiff was scheduled to work after her FMLA leave is a genuine issue of material fact for a jury to decide."  (*Id.*, PageID #468.)  As to whether University Manor's reason actually or sufficiently motivated her termination, Plaintiff maintains it could not have because she was scheduled to work on October 19.  (*Id.*)  On the third point, that University Manor's honest belief was not

so honestly held, Plaintiff argues her former employer's decision was not "reasonably informed and considered" because it was rendered only fifteen minutes after "scheduling [her] to work on October 19th[.]" (*Id.*, PageID #469–70.) Plaintiff relies largely on the same facts to argue her FMLA claim should also go to a jury, "because a genuine issue of material fact exists regarding whether" University Manor's reason for firing her was pretextual. (*Id.*, PageID #473–74.) Because the FMLA and ADA follow the same framework, Plaintiff's "pretext arguments . . . are the same[.]" (*Id.*)

As for negligent training, retention, and supervision, Plaintiff argues that, because University Manor and its employees (whom she did not name in this suit) violated the ADA and FMLA, factual disputes preclude summary judgment. Specifically, she argues that University Manor employees "received zero Relias trainings on disability discrimination or the FMLA." (*Id.*, PageID #477 (emphasis omitted).) Plaintiff reiterates that University Manor was statutorily obligated to inform her of her schedule after her FMLA leave ended, and it failed to do so. (*Id.*) Finally, on the records-production claim, Plaintiff argues that she did not have access to hours worked, even if she could access her payroll stubs through the online portal. (*Id.*, PageID #478.) Also, she argues that her ability to access the documents using the online portal is an exception without legal support and not an escape from liability for University Manor. (*Id.*)

## ANALYSIS

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

On a motion for summary judgment, the Court must view evidence in the light most favorable to the non-moving party. *Kirilenko-Ison v. Board of Educ. of Danville Indep. Schs.*, 974 F.3d 652, 660 (6th Cir. 2020) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

On a motion for summary judgment, the moving party has the initial burden of establishing that there are no genuine issues of material fact as to an essential element of the claim or defense at issue. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 & n.12 (6th Cir. 1989); *Chappell v. City of Cleveland*, 584 F. Supp. 2d 974, 988 (N.D. Ohio 2008). After discovery, summary judgment is appropriate if the non-moving party fails to establish "an element essential to that party's case and upon which that party will bear the burden of proof at trial." *Tokmenko v. MetroHealth Sys.*, 488 F. Supp. 3d 571, 576 (N.D. Ohio 2020) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

To determine whether a genuine dispute about material facts exists, it is not the Court's duty to search the record; instead, the parties must bring those facts to the Court's attention. *See Betkerur v. Aultman Hosp. Ass'n*, 78 F.3d 1079, 1087 (6th Cir. 1996). "The party seeking summary judgment has the initial burden of informing the court of the basis for its motion" and identifying the portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Tokmenko*, 488 F. Supp. 3d at 576 (citing *Celotex Corp.*, 477 U.S. at 322). Then, the nonmoving party must "set forth specific facts showing there is a genuine issue for trial." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). "When the moving

party has carried its burden under Rule 56(c), its opponent must do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586.

If a genuine dispute exists, meaning "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," summary judgment is not appropriate. *Tokmenko*, 488 F. Supp. 3d at 576 (citing *Anderson*, 477 U.S. at 250). However, if "the evidence is merely colorable or is not significantly probative," summary judgment for the movant is proper. *Id.* The "mere existence of some factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Anderson*, 477 U.S. at 247–48).

## I.     Plaintiff's FMLA and ADA Claims

"Although the factual scenarios that give rise to an FMLA or ADA cause of action may often coincide, the legal entitlements that flow from these facts will differ." *Chandler v. Specialty Tires of America, Inc.*, 283 F.3d 818, 825 (6th Cir. 2002) (citing *Navarro v. Pfizer Corp.*, 261 F.3d 90, 101 (1st Cir. 2001)) (noting that "[t]he ADA and the FMLA have divergent aims, operate in different ways, and offer disparate relief"). On the one hand, the "FMLA protects an employee from adverse action as a result of [her] taking leave for a serious medical condition." *Chandler*, 283 F.3d at 825. Conversely, the ADA "prohibits employers from discriminating against qualified individuals with disabilities." *Joostberns v. United Parcel Servs., Inc.*, 166 F. App'x 783, 798 (6th Cir. 2006). Nevertheless, the same analytical framework applies to both claims.

A plaintiff may prove discrimination or retaliation claims under either statute in one of two ways. First, a plaintiff may present direct evidence, which amounts to "smoking gun" evidence of discrimination or retaliation "that explains itself." *Gohl v. Livonia Pub. Schs. Sch. Dist.*, 836 F.3d 672, 683 (6th Cir. 2016). But direct evidence is rare. *See Kline v. Tennessee Valley Auth.*, 128 F.3d 337, 348 (6th Cir. 1997) ("It is the rare situation when direct evidence of discrimination is readily available . . . ."). If it exists, however, direct evidence allows a plaintiff to avoid altogether the second method of proving her case. *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985).

Second, more commonly, a plaintiff may prove discrimination or retaliation with indirect or circumstantial evidence. This method uses the familiar burden-shifting framework announced in *McDonnell-Douglas v. Green*, 411 U.S. 792, 802–06 (1973). *Jaszczyszyn v. Advantage Health Physician Network*, 504 F. App'x 440, 447 (6th Cir. 2012) (applying *McDonnell-Douglas* to FMLA retaliation claims); *Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 508 (6th Cir. 2006) (same); *Joostberns*, 166 F. App'x at 498 (applying *McDonnell-Douglas* to ADA discrimination claim). This framework does not shift the burden of proof between the parties; instead, it shifts the burden of production. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993); *Watson v. Fort Worth Bank & Tr.*, 487 U.S. 977, 986 (1988) (noting "these shifting burdens are meant only to aid courts and litigants in arranging the presentation of evidence[,]" but that the ultimate burden of proof remains "at all times with the plaintiff").

This familiar framework first requires a plaintiff to satisfy the prima facie elements for a particular claim. But "[t]he plaintiff's burden to establish a prima facie case is light, one easily met and not onerous." *Willard v. Huntington Ford, Inc.*, 952 F.3d 795, 808 (6th Cir. 2020) (cleaned up). "The sole function of the prima facie stage of the burden-shifting framework is to raise a rebuttable presumption of discrimination" that eliminates "the most common nondiscriminatory reasons for the employer's treatment of the plaintiff, such as the plaintiff is unqualified for the position or not a member of the protected group." *Id.* (cleaned up).

For an ADA discrimination claim, a plaintiff must demonstrate that she: (1) is disabled; (2) is otherwise qualified to perform the essential functions of her position, with or without an accommodation; and (3) suffered an adverse employment action because of her disability. *Demyanovich v. Cadon Plating & Coatings, LLC*, 747 F.3d 419, 433 (6th Cir. 2014). "The plaintiff's disability must be a 'but-for' cause of the adverse employment action." *Id.* (citing *Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 321 (6th Cir. 2012) (en banc)).

For an FMLA retaliation claim, a plaintiff must show that: "(1) she availed herself of a protected right under the FMLA by notifying [her employer] of her intent to take leave; (2) she suffered an adverse employment action; and (3) there was a causal connection between the exercise of her rights under the FMLA and the adverse employment action." *Edgar*, 443 F.3d at 508. The burden to show a "causal connection" is "minimal" and needs to amount only to "some credible evidence that

enables the court to deduce that there is a causal connection between the retaliatory action and the protected activity." *Seeger*, 681 F.3d at 283.

Where, as here, an employee satisfies this initial prima facie showing, the burden of production shifts to the employer to provide a legitimate, non-discriminatory reason for its actions. *See Kirilenko-Ison*, 974 F.3d at 661 (analyzing an ADA discrimination claim); *Edgar*, 443 F.3d at 508 (assessing an FMLA retaliation claim). Plaintiff does not challenge whether Defendant has done so—conceding that University Manor's termination of Ms. Van Leer based on its no-call, no-show policy is a legitimate non-discriminatory reason.

Instead, the parties dispute the third step of the *McDonnell-Douglas* framework. At this stage, to satisfy her burden and avoid summary judgment, Plaintiff must identify a genuine dispute of material fact demonstrating that her termination amounts to pretext for discrimination or retaliation that the ADA or FMLA prohibits. She may do so by showing that University Manor's decision (1) had no basis in fact, (2) did not actually motivate her firing, or (3) was insufficient to warrant termination. *See Brown v. Kelsey-Hayes Co.*, 814 F. App'x 72, 80 (6th Cir. 2020) (citing *Hostettler v. College of Wooster*, 895 F.3d 844, 858 (6th Cir. 2018)). These categories provide a "convenient way of marshalling evidence," but need not be followed rigidly. *Id.* Instead, they help guide the ultimate inquiry: whether Plaintiff can "show both that the employer's proffered reason was not the real reason for its action, and that the employer's real reason was unlawful." *EEOC v. Ford Motor Co.*,

782 F.3d 753, 767 (6th Cir. 2015) (en banc) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000)).

Because many of Plaintiff's arguments regarding her FMLA and ADA claims overlap, including Defendant's reliance on its honest belief, the Court begins its analysis there.

## I.A.    The Honest-Belief Defense

Under this first way of showing pretext—that an employment decision has no basis in fact—an employer benefits from a presumption about its honest belief, which can render an inference of pretext unwarranted. *Seeger*, 681 F.3d at 285. This rule applies with equal force in the ADA and FMLA contexts. *Smith v. Towne Props. Asset Mgmt. Co.*, 803 F. App'x 849, 853 (6th Cir. 2020) (holding the plaintiff "cannot win on her FMLA claim for the same reason she cannot win on her ADA claim—because she can't show pretext."). The "key inquiry" to whether the belief is honestly held is whether the employer made a "reasonably informed and considered decision" before taking the action. *Michael v. Caterpillar Fin. Serv. Corp.*, 496 F.3d 584, 598–99 (6th Cir. 2007) (quoting *Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir. 1998)); *see also Smith*, 803 F. App'x at 851–52 (discussing the honest belief rule and the employer's investigation, holding it was more than adequate and "pretty much takes care of the ADA claim").

"As long as an employer has an honest belief in its proffered nondiscriminatory reason for discharging an employee, the employee cannot establish that the reason was pretextual simply because it was ultimately shown to be incorrect." *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir. 2001) (citation

omitted); *see Babb v. Maryville Anesthesiologists P.C.*, 942 F.3d 308, 322–23 (6th Cir. 2019) (discussing the employer's honest belief); *Tingle v. Arbors at Hillard*, 692 F.3d 523, 530 (6th Cir. 2012) (employee simply argued she was "not guilty of the conduct that led to . . . her ultimate termination."). Instead, to overcome an employer's honest belief, a plaintiff must "put forth evidence which demonstrates that the employer did not honestly believe in the proffered non-discriminatory reason for its adverse employment action." *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 286 (6th Cir. 2012) (quoting *Braithwaite v. Timken Co.*, 258 F.3d 488, 494 (6th Cir. 2001)).

A plaintiff must "show 'more than a dispute over the facts upon which the discharge was based.'" *Seeger*, 681 F.3d at 285 (quoting *Braithwaite*, 258 F.3d at 493–94). One way to do so involves proffering facts to the contrary, like an "error on the part of the employer that is 'too obvious to be unintentional[,]'" *id.* (quoting *Smith*, 155 F.3d at 807), or that the employer's pre-termination investigation was not "reasonably informed and considered," *Hale v. Mercy Health Partners*, 617 F. App'x 395, 399 (6th Cir. 2015). However, an employer's investigation "need not be perfect in order to pass muster under the rule." *Hale*, 617 F. App'x at 399 (quoting *Loyd v. Saint Joseph Mercy Oakland*, 766 F.3d 580, 591 (6th Cir. 2014)). "When an employer reasonably and honestly relies on particularized facts in making an employment decision, it is entitled to summary judgment on pretext even if its conclusion is later shown to be mistaken, foolish, trivial, or baseless." *Chen v. Dow Chem. Co.*, 580 F.3d 394, 401 (6th Cir. 2009).

Plaintiff argues University Manor "did not make a reasonably informed and considered decision before terminating" her. (ECF No. 22, PageID #469.) She notes "no more than fifteen minutes had elapsed between" Hollenbeck's two calls—one telling Ms. Van Leer to come in on October 19, and the other firing her. Plaintiff contends these facts show that "the only reasonable inference to draw is" Hollenbeck "investigated nothing at all" such that termination of Ms. Van Leer did not constitute a reasonable and informed decision. (*Id.*, PageID #470.) Defendant responds that University Manor's investigation was adequate and that Hollenbeck, Rose, and Mills, at different points leading up to the termination decision, each investigated whether Ms. Van Leer was a no-show by comparing her return to work notice to the October schedule. (ECF No. 23, PageID #485.)

The record before the Court fails to support Plaintiff's argument and shows that there is no genuine dispute of fact about University Manor's decision to fire Ms. Van Leer or the process by which it reached that decision. First, University Manor has a *written* no-call, no-show termination policy Ms. Van Leer was subject to and aware of. (ECF No. 13-1, PageID #121; ECF No. 13-2, PageID #164; ECF No. 13-3, PageID #178–80.) Under the policy, there is no progressive discipline—even one violation of the rule results in "**immediate termination**." (ECF No. 13-3, PageID #179.) University Manor regularly enforces this policy. (ECF No. 17-1, ¶ 7, PageID #358; ECF No. 17-2, PageID #360–65.)

Second, the record demonstrates that Hollenbeck's decision to terminate Ms. Van Leer was sufficiently reasoned and considered following her discussion with

Mills. After hanging up with Ms. Van Leer, Hollenbeck went to see Mills in her office, who confirmed there was "no leniency" in the no-call, no-show policy. (ECF No. 16-1, PageID #350.) The pair concluded that Ms. Van Leer's failure to come to work on October 17, without prior excuse, violated this policy and warranted termination. (*Id.*, PageID #350–51.) Even viewing the facts in a light most favorable to Plaintiff, no facts—disputed or otherwise—call into question University Manor's honest belief that Ms. Van Leer was able to work, available to work, no longer on leave, and did not show for her scheduled shift.

The cases on which Plaintiff relies do not change this outcome. She points first to *Kurtzman v. University of Cincinnati*, No. 1:09-cv-580, 2012 WL 1805486, at *13 (S.D. Ohio May 17, 2012), as an analogous case denying summary judgment where an employer failed to investigate before firing an employee. (ECF No. 22, PageID #470.) In *Kurtzman*, however, the magistrate judge raised the honest-belief defense *sua sponte* in the report and recommendation. 2012 WL 1805486, at *13. In addressing objections to that report and recommendation, the court determined that "the record contain[ed] no evidence" the employer conducted "any investigation, much less a reasonable one" and the employer's honest belief did not hold. *Id.* Further, the employee pointed to evidence that the employer was "unaware of many relevant details and did not conduct a reasonable investigation." *Id.* These facts in *Kurtzman* stand in marked contrast to the record here.

Plaintiff also argues her case is identical to *Jones v. Elmwood Centers, Inc.*, 2014 WL 1761567, at *6 (N.D. Ohio Apr. 30, 2014). (ECF No. 22, PageID #471.) But

several factual differences are readily apparent. Most notably, in *Jones*, the policy pursuant to which the employee was terminated was not written, had not been discussed with her, and had not formed the basis of any prior disciplinary action. *Id.* In contrast, University Manor had a written no-call, no-show policy, Ms. Van Leer knew the policy existed and that it applied to her, and University Manor enforced this rule often. Unlike in *Jones*, Ms. Van Leer had ample opportunity to confirm the details about her return before her leave ended.

For all these reasons, Plaintiff cannot defeat Defendant's honest belief, and the record contains no genuine disputes of material fact that would allow a reasonable jury to return a verdict for Plaintiff.

### I.B.    The FMLA Claim

Even setting aside the honest-belief defense, the record demonstrates that University Manor is entitled to a summary judgment on Plaintiff's FMLA claim. In relevant part, the Family and Medical Leave Act provides eligible employees "as many as twelve weeks of leave" per year if the employee has, among other things, "a 'serious health condition that makes the employee unable to perform the functions of the position of such employee.'" *Chandler*, 283 F.3d at 825 (quoting 29 U.S.C. § 2612(a)(1)(D)). Additionally, the statute mandates that employers "restore the employee to her prior position or an equivalent position upon return from leave." *Id.* (citing 29 U.S.C. § 2614(a)(1)).

The FMLA's anti-retaliation provision, 29 U.S.C. § 2615(a)(2), prohibits "discriminat[ion] against any individual for any practice made unlawful" by the Act. *Id.* This includes "retaliatory discharge for taking leave." *Marshall v. The Rawlings*

*Co.*, 854 F.3d 368, 376 (6th Cir. 2017) (quoting *Arban v. West Publ'g Corp.*, 345 F.3d 390, 403 (6th Cir. 2003)). "In other words, a retaliation claim is about whether the employer took some adverse action against an employee *after* they availed themselves of their FMLA rights, not about whether the employee's FMLA rights were impeded in the first place." *Schobert v. CSX Transp.*, 504 F. Supp. 3d 753, 806 (S.D. Ohio 2020) (citing *Marshall*, 854 F.3d at 376).

Plaintiff does not allege that University Manor interfered with her ability to take leave. Her claim maintains Defendant fired her instead of allowing her to return to work following her leave. To carry her burden, Plaintiff must point to a genuine dispute of material fact that University Manor's reliance on its no-call, no-show policy to justify its decision to terminate Ms. Van Leer was a pretext. In doing so, Plaintiff can rely on any circumstantial evidence, including that University Manor's reason "had no basis in fact, did not motivate the termination, or was insufficient to warrant the termination." *Donald v. Sybra, Inc.*, 667 F.3d 757, 762 (6th Cir. 2012).

### I.B.1. Plaintiff's Arguments

Plaintiff makes three arguments that University Manor's decision to terminate Ms. Van Leer was pretextual. Each fails.

*First*, Plaintiff argues that University Manor "would not have scheduled Plaintiff to work on October 19th" unless it had an illicit motive for her termination. (ECF No. 22, PageID #468.) Construing the record in the light most favorable to Plaintiff, the evidence does not support this argument. After failing to report to work on October 17, Hollenbeck initially told Ms. Van Leer to report to work on October 19 so "maybe" the two could "discuss" the absence. (ECF No. 14-1, PageID #267.) After

Hollenbeck conferred with Mills, however, the two decided the no-call, no-show policy required terminating Ms. Van Leer's employment. (*Id.*) That policy, as Rose separately recalled, was the impetus for fifty-eight terminations in three years. ([ECF No. 17-1](), ¶ 7, PageID #358; [ECF No. 17-2](), PageID #360–65.) These facts leave no room for a reasonable jury to find for Plaintiff at trial.

*Second*, in a passing footnote separate from her argument about pretext, Plaintiff suggests that 29 C.F.R. § 825.300(c)(1)(vi) places an affirmative duty on employers to inform employees returning from FMLA leave when they are next scheduled and supposed to return to work. ([ECF No. 22](), PageID #464 n.3.) The section Plaintiff cites is titled "Employer notice requirements" and does appear to place an affirmative duty on employers to provide certain notices to employees. 29 C.F.R. § 825.300. In particular, Section 825.300(c)(1)(vi) requires an employer to "provide written notice . . . each time the eligibility notice is provided" under Subsection (b). *Id.* § 825.300(c)(1). Subsection (b) requires providing notice to employees "when an employee requests FMLA leave, or when the employer acquires knowledge that an employee's leave may be for an FMLA-qualifying reason[.]" *Id.* § 825.300(b)(1). Even then, Subsection (c)(1)(vi) only requires providing notice to an employee about her "rights to maintenance of benefits during the FMLA leave and restoration to the same or equivalent job upon return from FMLA leave." *Id.* § 825.300(c)(1)(vi). It then cites Section 825.214, which provides, as a general rule that, "[o]n return from FMLA leave, an employee is entitled to be returned to the same position that the employee held when leave commenced," or to an equivalent

one, and that the right to reinstatement exists "even if the employee has been replaced or his or her position has been restructured to accommodate" the FMLA absence.

In other words, this regulation requires notice to an employee of her rights during FMLA leave, the obligations on the employee, and the consequences of a failure to meet those obligations. Contrary to Plaintiff's suggestion, this notice requirement does not establish an affirmative duty on an employer "to communicate a return to work date" to an employee returning from leave. (ECF No. 22, PageID #464 n.3.)

*Third*, Plaintiff argues Rose "told [her] not to rely on" the October 2019 schedule because the document had "subject to change" written across the top. (ECF No. 22, PageID #472.) This fact, assuming its truth, does not support a reasonable inference of pretext. Ms. Van Leer admits she did not check the October 2019 schedule when she dropped off paperwork relating to her return to work. (ECF No. 13-1, PageID #129.) Ms. Van Leer agreed she could have done so (*id.*) and that she knew how the schedule worked (*id.*, PageID #123–24). Yet Plaintiff maintains she could not rely on the schedule because Rose indicated the words "subject to change" meant that nurses and staff could not "go by" that document, and Ms. Van Leer "understood from Rose's explanation about the FMLA that Plaintiff could not rely on the October 2019 schedule." (ECF No. 22, PageID #463 (citing ECF No. 15-1, PageID #318–19.)

This argument depends on misreading the testimony in the record. For example, what Rose recalled was *not* that Ms. Van Leer could not rely on the schedule regarding *her own* work schedule, but that the schedule did not reflect any post-publication changes. ([ECF No. 15-1](), PageID #318.) That is, an employee could look at the schedule and see when she was supposed to work. To be sure, the calendar might not be accurate in one of two circumstances: (1) when an employee called off or took vacation *after* the schedule was published, or (2) when University Manor changed an employee's shift (which required two-weeks' notice). (*Id.*, PageID #319.) The record contains no evidence that either circumstance applies here. If one or the other did, Ms. Van Leer would know she was not supposed to report to work because she would have either called off or received notice if University Manor had changed her schedule. (*Id.*, PageID #322.) The record shows Ms. Van Leer was scheduled to work on October 17, 2019, and neither reason the schedule might not be accurate applied to her. ([ECF No. 13-7](), PageID #202.) Therefore, the words "subject to change" on the schedule do not create a dispute of fact. Further, there is no evidence—and Plaintiff does not argue—that University Manor changed her October 2019 schedule without notice. The record demonstrates that a reasonable jury could not rule in Plaintiff's favor.

### I.B.2. Plaintiff's Authorities

Plaintiff argues her situation is "more identical to *Applegate v. General Aluminum*, Civ. No. 1:05-cv-41, 2006 WL 8451991 (N.D. Ind. Mar. 30, 2006)." ([ECF No. 22](), PageID #475.) There, the employee was subject to an attendance policy that required him to notify his supervisor of any absence "as far in advance as possible" or

at least "30 minutes prior to the beginning" of the shift. 2006 WL 8451991, at *2. After several probations for absenteeism, the employee took FMLA leave. He was cleared to return to work, but the next day was put on probation again for excessive absenteeism. When that probation ended, the employee was scheduled to work a few days later, but was fired after the employer claimed the employee was absent and failed to call off according to the attendance policy. The employee brought a claim for retaliation for taking FMLA leave.

In *Applegate*, the plaintiff argued that he was not informed of his shift change. Also, he maintained that the notice he provided under the attendance policy would have been timely had he received proper notice and substantiated FMLA leave for the particular day at issue with a doctor's note. Based on those facts and sequence of events, the court denied summary judgment on the FMLA claim because the employee's "attendance had actually been improving" and further it was "puzzling" why the employer placed the employee on probation the day after he returned from leave. *Id.* at *5. As for the "no-call no-show" there, the record demonstrated that the employee "called in (late) on the date he was cited as being 'no call, no show,' was told to return to work first shift" the next day, did so, and "presented a doctor's note when he returned" but was terminated anyway. *Id.*

Based on *Applegate*, Plaintiff argues that "enforcing a zero-tolerance attendance policy . . . raise[s] an inference of retaliation." (ECF No. 22, PageID #475–76.) But the facts in *Applegate* differ materially from those here. First, the employee in *Applegate* was not subject to a zero-tolerance policy, but one enforced

with progressive discipline. *Applegate*, 2006 WL 8451991, at *2. In contrast, University Manor has a zero-tolerance attendance policy and regularly enforces it. Second, the employee in *Applegate* provided some evidence about a discrepancy regarding his shift on November 1. Here, in contrast, Plaintiff knew she was scheduled to work, and there was no confusion or dispute about that fact. Finally, the employee in *Applegate* substantiated his absence on the disputed day with proper certification, something Ms. Van Leer did not do here.

Moreover, the Sixth Circuit holds that temporal proximity between the end of leave and termination alone does not demonstrate pretext. "Unlike its role in establishing a prima facie case, the law in this circuit is clear that temporal proximity cannot be the sole basis for finding pretext." *Donald*, 667 F.3d at 763; *see also Judge v. Landscape Forms, Inc.*, 592 F. App'x 403, 410 (6th Cir. 2014) (quotation omitted). Instead, "suspicious timing is a strong indicator of pretext . . . only when accompanied by some other, independent evidence of discrimination or retaliation." *Parkhurst v. American Healthways Servs., LLC*, 700 F. App'x 445, 451 (6th Cir. 2017) (cleaned up). Even considering the timing of Ms. Van Leer's termination on the day she was to return to work does not support her retaliation claim without more. The record does not contain more evidence from which a jury could find in her favor, entitling Defendant to summary judgment on Plaintiff's claim for FMLA retaliation, even if the honest-belief defense were unavailable.

## I.C.    Disability Discrimination

Plaintiff claims University Manor discriminated against her because of her eczema, in violation of both the Americans with Disabilities Act and parallel

provisions of State law. Federal and State laws prohibiting disability discrimination are analyzed together. *See, e.g.*, *Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 201 (6th Cir. 2010). Ohio courts also look to the federal standard for guidance when interpreting State law in this context. *City of Columbus Civ. Serv. Comm'n v. McGlone*, 82 Ohio St. 3d 569, 573, 1998-Ohio-410, 697 N.E.2d 204, 206–07 (1998).

Although Plaintiff admits that her FMLA and ADA claims overlap to a great extent ([ECF No. 13-1](), PageID #131), the two laws are different. *See Chandler*, 283 F.3d at 825 ("Although the factual scenarios that give rise to an FMLA or ADA cause of action my often coincide, the legal entitlements that flow from these facts will differ."). As with Plaintiff's claims under the Family and Medical Leave Act, the parties look past Plaintiff's prima facie case and Defendant's legitimate nondiscriminatory justification and focus their arguments on pretext. On this point, Plaintiff bears the burden of showing that University Manor's real reason for terminating her was "because of" or "but for" her disability. *See Darby v. Childvine, Inc.*, 964 F.3d 440, 444–45 (6th Cir. 2020) (citing *Lewis*, 681 F.3d at 321; *Donald*, 667 F.3d at 763).

Plaintiff comes forward with no evidence that would allow a reasonable jury to find that anyone at University Manor discriminated against her *because of* her eczema. Beyond the arguments relating to the FMLA claim, which Plaintiff largely adopts to support her ADA claim ([ECF No. 22](), PageID #467), Plaintiff points to no facts in the record demonstrating that Mills, Rose, Hollenbeck, or anyone else at University Manor discriminated against her, let alone *because of* her eczema.

As the non-moving party, Plaintiff must identify some genuine dispute regarding a material fact in the record to submit her ADA claim to a jury. She has not done so. Accordingly, University Manor is entitled to summary judgment on the ADA discrimination claim. Because the State discrimination claim rises and falls with its federal counterpart, University Manor is entitled to summary judgment on that claim as well.

## II.     Plaintiff's Separate State-Law Claims

Plaintiff asserts two claims under Ohio law, one for negligent training, retention, and supervision, and the other for University Manor's alleged failure to produce employment records. Because exercising supplemental jurisdiction over these claims will aid the efficient disposition of the parties' dispute, and none of the exceptions apply, *see* 28 U.S.C. §§ 1367(a), (c)(1)–(4), the Court exercises jurisdiction over Plaintiff's remaining State-law claims.

### II.A.   Negligent Training, Retention, and Supervision

To prevail on this claim, a plaintiff "must show that an accused employee be individually liable for a tort against" her before being allowed to seek "recovery against the employer." *Colston v. Cleveland Pub. Libr.*, 522 F. App'x 332, 338 (6th Cir. 2013) (citing *Strock v. Pressnell*, 38 Ohio St. 3d 207, 217, 527 N.E.2d 1235, 1244 (1988)). That is, "to maintain an action against the employer, a third party must allege that one of the employees is individually liable for a tort." *Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 517 (6th Cir. 1999).

Plaintiff has not alleged any individual has liability for a tort, let alone named any individual as a defendant here. Plaintiff argues that "the employees aided and

abetted the disability discrimination" in violation of Section 4112.02(J) of the Ohio Revised Code. (ECF No. 22, PageID #477.) But Plaintiff failed to name any employee of University Manor as a defendant, let alone assert a claim for an unlawful discriminatory practice under Section 4112.02. (*See* ECF No. 1-1, ¶¶ 52–59, PageID #12–13.) And there is no individual liability under the ADA. *See Wathen v. General Elec. Co.*, 115 F.3d 400, 404 n.6 (6th Cir. 1997) (noting that there is no individual liability under Title VII, the ADEA, or the ADA). Therefore, neither State nor federal disability discrimination claims can form the basis of a negligent training, retention, or supervision claim.

As for the FMLA, Plaintiff did not assert a claim for violation of the Family and Medical Leave Act against any employee of University Manor. To be sure, Plaintiff argues that "the employees also violated [Section] 104 of the FMLA" by not restoring her to her previous position. (ECF No. 22, PageID #477.) But that is not enough to assert a claim for violation of Section 4112.02. In any event, even assuming a private right of action against an individual for an FMLA violation, *see Mitchell v. Chapman*, 343 F.3d 811, 830 n.22 (6th Cir. 2003) ("This interpretation underlies our prior determination that the FMLA extends individual liability to private-sector employees."), Plaintiff failed to assert a claim against any particular employee of University Manor. Without a predicate for this claim, an allegation from which a jury could find an individual liable, University Manor is entitled to judgment as a matter of law.

## II.B.   Failure to Produce Records

Plaintiff claims that University Manor failed to produce records in violation of Article II, Section 34a of the Ohio Constitution and Section 4111.14(F)–(G) of the Ohio Revised Code.   That constitutional provision and its enabling statute require employers to "maintain a record of the name, address, occupation, pay rate, hours worked for each day worked, and each amount paid" for every employee going back at least three years from the "last date the employee was employed by the employer." Ohio Rev. Code § 4111.14(F).  The statute also requires an employer to provide these records "without charge" to the requesting employee or someone acting on the employee's behalf.  *Id.* § 4111.14(G).  The employer must do so within "thirty business days," an agreed-to "alternative time period," or "as soon as practicable" if providing the records would "cause a hardship on the employer under the circumstances."  *Id.* § 4111.14(G)(3)(a)–(b).

Section 4111.14(G) of the Revised Code and Article II, Section 34a of the Ohio Constitution provide employees a private right of action when an employer fails to produce, upon request, certain employment records in a timely manner.  *Clark v. Shop24 Global, LLC*, No. 2:12-cv-802, 2014 WL 60071, at *3 (S.D. Ohio Jan. 7, 2014). A plaintiff may also seek damages:  "If an employee is forced to file suit *to obtain the requested records*, the employer must pay reasonable attorneys' fees and costs."  *Lacy v. Reddy Elec. Co.*, No. 3:11cv-52, 2013 WL 3580309, at *15 (S.D. Ohio July 11, 2013) (emphasis added).

Plaintiff asserts in her complaint that in November 2019, "a person acting on behalf of Plaintiff" requested documents and records from University Manor.  (ECF

No. 1-1, ¶ 76, PageID #15.)  On summary judgment, Defendant argues Ms. Van Leer had access to her employment records through the company's online payroll portal. (ECF No. 19-1, PageID #396.)  Plaintiff argues her access to that portal, Ultipro, does not substitute for University Manor's obligations under State law and, in any event, did not provide all of the information the statute mandates an employer provide. (ECF No. 22, PageID #478.)  Defendant counters that "there is no reason why providing access to payroll records through an internet-based application cannot" satisfy its obligation under the statute.  (ECF No. 23, PageID #489.)

The parties do not cite, and the Court has not located, any authority discussing whether providing records that contain the information required by Section 4111.14(F) through an online portal discharges an employer's constitutional and statutory duties.  But the Court need not decide this question or predict how the Ohio Supreme Court may resolve it, because Plaintiff fails to carry her burden on summary judgment.  "Rule 56 places an affirmative duty on the nonmovant to cite to 'particular parts of materials in the record' to establish that a particular fact cannot be supported or is genuinely disputed."  *Emerson v. Novartis Pharms. Corp.*, 446 F. App'x 733, 734 (6th Cir. 2011) (quoting Fed. R. Civ. P. 56(c)(1)).  "District courts need not independently comb through the record and establish that it is bereft of a genuine issue of material fact before granting summary judgment."  *Id.* (citing *Chicago Title Ins. Corp. v. Magnusun*, 487 F.3d 985, 995 (6th Cir. 2007)).

Although Plaintiff's complaint alleges a violation of Ohio law regarding the production of documents, on summary judgment Plaintiff may not rest on her

pleadings alone. *Anderson*, 477 U.S. at 248–49. Instead, she must identify specific facts that support those allegations. She fails to do so. For example, Plaintiff points to no evidence that she requested the documents in the first place, whether she made such a request before or after filing suit, or that she filed suit *to obtain* these records. Because Plaintiff does not come forward with evidence that Ms. Van Leer requested her employment records and hours worked from University Manor in the first place, summary judgment is appropriate.

## CONCLUSION

For the foregoing reasons, University Manor is entitled to summary judgment on all of Ms. Van Leer's claims. Accordingly, the Court **GRANTS** University Contract Company, LLC's motion (ECF No. 19) and **DIRECTS** the Clerk to enter judgment accordingly.

**SO ORDERED.**

Dated: July 9, 2021

_____
J. Philip Calabrese
United States District Judge
Northern District of Ohio